**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

| | | |
|---|---|---|
| MAURICE A. YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:06-cv-526-SEB-VSS |
| | ) | |
| OFFICER PATRICK CAVANAUGH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**Entry Discussing Motion for Summary Judgment**

Plaintiff Maurice Young ("Young") filed this action on April 3, 2006, alleging that the defendant police officers, Officer James Carver and Officer Michael Patrick Kavanaugh (identified in the complaint as Officer Patrick Cavanaugh), violated his Fourth, Fifth, Eighth and Fourteenth Amendment Rights by intentionally beating him during a traffic stop and by detaining him without lawful authority on September 27, 2005. Young also alleges that it was the policy and practice of defendant City of Indianapolis to authorize certain officers to cover up the use of excessive force despite the lack of probable cause to arrest. Young also asserts state law assault and battery, intentional infliction of emotional distress, and negligence claims. The defendants seek resolution of Young's claims through the entry of summary judgment.

Whereupon the court, having considered the pleadings, the motion for summary judgment, the response to such motion and the reply to such response, and being duly advised, finds that the defendants' motion for summary judgment must be **granted.** This conclusion is based on the following facts and circumstances:

1.      Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). To survive summary judgment, the non-movant must set forth "specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e). "Factual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [non-movant].'" *Oest v. Illinois Dep't of Corrections,* 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, [the non-movant] must respond to the defendants' motion with evidence setting forth specific facts showing that there is a genuine issue for trial. . . . To successfully oppose the defendants' motion for summary judgment, [the non-movant] must do more than raise a "metaphysical doubt" as to the material facts . . . and instead must present definite, competent evidence to rebut the motion.

*Michael v. St. Joseph County,* 259 F.3d 842, 845 (7th Cir. 2001) (internal citations omitted). A non-movant's burden may be met through the designation of specific facts in affidavits, depositions, answers to interrogatories or admissions. *Selan v. Kiley,* 969 F.2d 560, 564 (7th Cir. 1992).

2.      In this case, Young has not opposed the motion for summary judgment. "[A] party's failure to comply with summary judgment evidentiary requirements is traditionally remedied . . . by excluding the non-conforming submission and deeming the opposing party's proposed findings of fact admitted and then determining whether those facts entitle the moving party to judgment as a matter of law." *Ziliak v. AstraZeneca LP,* 324 F.3d 518, 520 (7th Cir. 2003) (citing cases).   Accordingly, the factual assertions on which the defendants' motion for summary judgment is based and which are supported by the evidentiary record are accepted as true for the purpose of resolving that motion. *Corder v. Lucent Techs., Inc.,* 162 F.3d 924, 927 (7th Cir. 1998); *Flaherty v. Gas Research Inst.,* 31 F.3d 451, 453 (7th Cir. 1994); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This is the result of Local Rule 56.1(h), of which the plaintiff was notified. The majority of the facts on which the motion for summary judgment is based are established through the Young's failure to respond to requests for admissions served on him. See, e.g., *Kohler v. Leslie Hindman, Inc.,* 80 F.3d 1181, 1185 (7th Cir. 1996) ("When a party in a lawsuit makes an admission in its pleadings or in its answer to a request for admissions, it makes a judicial admission that can determine the outcome of that lawsuit." (citing Fed.R.Civ.P.  36(b))); *Keller v. United States,* 58 F.3d 1194, 1199 n.8 (7th Cir. 1995) ("Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal . . . .   [They]  have the effect of withdrawing a fact from contention." (quotations omitted)).

3.      The undisputed evidentiary record in this case is the following. As used in the following narrative, "the traffic stop" refers to the stop of Young by Indianapolis police officers on September 27, 2005, and all the events described occurred on September 27, 2005, unless indicated otherwise. The correct spelling of Officer Kavanaugh's last name will be used.

a.      Young failed to stop at a stop sign located at 30th Street and Elmira Street in Indianapolis.

b.      Officers Carver and Kavanaugh were not riding in the same police vehicle. They did, however, make the traffic stop.

c.      Neither Officer Carver nor Officer Kavanaugh drew his firearm on Young. Neither Officer Carver nor Officer Kavanaugh beat or hit Young. Neither Officer Kavanaugh nor Officer Carver wrestled Young to the ground or battered Young.

d.      Young received no physical injuries as a result of the traffic stop. Young received no medical treatment as a result of the traffic stop. Young incurred no medical expenses as a result of the traffic stop.

e.      Young has no evidence that the City of Indianapolis has a policy and practice to authorize certain police officers to cover up the use of excessive force despite the lack of probable cause to arrest or of any actual violation which would justify the issuance of a ticket.

f.      Young served no notice of tort claim to the City of Indianapolis based on events associated with the traffic stop before he filed the present action.

4.      As already noted, Young has asserted a medley of both federal and state law claims. The federal claims are asserted pursuant to 42 U.S.C. § 1983. The court has subject matter jurisdiction over the federal claim pursuant to 28 U.S.C. §§ 1331 and 1343(3). Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, "the first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994).

5.      Protections guaranteed by the Fifth and Eighth Amendments are simply inapplicable to the traffic stop or the events subsequent thereto.

6.      Two of Young's claims, however, are rooted in protections of the Fourth Amendment of the United States Constitution. The Fourth Amendment provides: "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated."

7.      The first matter here is the warrantless arrest of Young.

a.      "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford,* 125 S. Ct. 588, 593 (2004) (citations omitted).

b.      A law enforcement officer has probable cause to arrest a suspect "when the totality of the facts and circumstances within his knowledge and of which he has reasonably trustworthy information is sufficient to warrant a prudent person in believing the suspect committed or was committing an offense." *Marshall v. Teske,*

284 F.3d 765, 770 (7th Cir. 2002). Federal law asks only whether the officers had probable cause to believe that the predicate offense, as the state has defined it, has been committed. *Richardson v. Bonds*, 860 F.2d 1427, 1432 n.4 (7th Cir. 1988). That is an important question, however, because "[a]n essential predicate to any § 1983 claim for unlawful arrest is the absence of probable cause." *Kelley v. Myler*, 149 F.3d 641, 645 (7th Cir. 1998) (citing *Jones by Jones v. Webb,* 45 F.3d 178, 181 (7th Cir. 1995)).

c.      Young's operation of the motor vehicle prior to the traffic stop, insofar as pertinent to his claims in this case, consisted in him having failed to stop at a stop sign located at 30th Street and Elmira Street in Indianapolis. This fact was known to the defendants. This fact showed that Young violated a traffic law regulating the flow of motor vehicle traffic at street intersections. As the defendants note, failing to stop at a stop sign is a Class C infraction pursuant to IND. CODE §§ 9-21-8-32 and 49.

d.      For the reasons explained above, probable cause for Young's arrest existed in conjunction with the traffic stop. This probable cause for the traffic stop, including Young's arrest, and the existence of probable cause for Young's arrest precludes his claim under § 1983. *Juriss v. McGowan,* 957 F.2d 345, 349 n.1 (7th Cir. 1992) ("It is well settled that the actual existence of probable cause to arrest precludes a § 1983 suit for false arrest.")(citing *Schertz v. Waupaca County,* 875 F.2d 578, 582 (7th Cir. 1989)).

8.      Young's second Fourth Amendment claim is that the defendants used constitutionally excessive force in arresting him.

a.      "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor,* 490 U.S. 386, 396 (1989). Nonetheless, the Fourth Amendment prohibits the use of excessive force during the execution of a seizure. *Id.* at 395 (holding that the Fourth Amendment's objective reasonableness test is the appropriate standard for evaluating excessive force claims).[1]

b.      In order to decide whether the amount of force used during a seizure is "excessive," a court examines the totality of the circumstances to determine whether the intrusion on the citizen's Fourth Amendment interests was justified by the countervailing government interests at stake. *See Lanigan v. Village of E. Hazel Crest,* 110 F.3d 467, 475 (7th Cir. 1997).

> Whether excessive force was used is evaluated under the "objective reasonableness" standard, through which courts assess whether the actor's actions were objectively reasonable "in light of the facts and

---

[1]This also establishes that the Fourteenth Amendment's guarantee of due process does not provide the constitutional standard for any of the conduct attributed to the defendants in this case.

circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397; *Chapman v. Keltner,* 241 F.3d 842, 847 (7th Cir. 2001). Factors which are relevant to this evaluation include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham,* 490 U.S. at 396. Ultimately, the excessive force inquiry "looks to whether the force used to seize the suspect was excessive in relation to the danger he posed--to the community or to the arresting officers--if left unattended." *McDonald v. Haskins,* 966 F.2d 292, 294 (7th Cir. 1992); *see also Lanigan v. East Hazel Crest,* 110 F.3d 467, 475 (7th Cir. 1997).

*Jacobs v. City of Chicago,* 215 F.3d 758, 773 (7th Cir. 2000). A court is also to consider "whether the citizen was under arrest or suspected of committing a crime, was armed, or was interfering or attempting to interfere with the officer's execution of his or her duties." *Id.* (citing *McDonald v. Haskins,* 966 F.2d 292, 292-93 (7th Cir. 1992)).

c.     Although the record does not supply every detail of the force used by the defendants, the record is clear that *excessive* force was not used. This is apparent from the fact that Young was not battered, was not injured, was not wrestled to the ground, was not beaten or hit, and did not have a firearm drawn on him–all in relation to the defendants' conduct, which of course is the only conduct for which they could be found responsible in a case such as this. *See Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995) (plaintiff must show that defendant was personally involved in claimed violation to succeed on claim under § 1983).

d.     There was no unconstitutional force used against Young during his arrest by the defendants following the traffic stop.

9.     The City of Indianapolis is also a defendant in this action. The court recognizes that municipalities are "persons" subject to suit under § 1983, but liability may be imposed only "when execution of [its] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . ." *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 694 (1978). In *City of Los Angeles v. Heller,* 475 U.S. 796 (1986), the Supreme Court held that a local government cannot be held liable for a constitutional deprivation allegedly brought about through an official policy or custom if a determination has been made that there was no constitutional violation committed by anyone in the first place. The analysis of Young's claims against the defendant officers shows that there was no violation of Young's federally secured rights in connect with his arrest. Thus, there can be no § 1983 claim against the City of Indianapolis. *See Escalera v. Lunn,* 361 F.3d 737, 749 (2d Cir. 2004) (holding that because there was no section 1983 claim against the individual police officer defendants the County was also entitled to summary judgment).

10.     The resolution of Young's federal claims against the defendant officers makes it unnecessary to address the second prong of a qualified immunity analysis, although they have made that argument.

11.     The foregoing resolves Young's federal claims in the case. This court's jurisdiction over his pendent claims under Indiana law is conferred by 28 U.S.C. § 1367(a). However, when a district court dismisses the claims over which it had original jurisdiction, it has discretion either to retain jurisdiction over the supplemental claims or to dismiss them. 28 U.S.C. § 1367(c)(3); *Kennedy v. Schoenberg, Fisher & Newman, Ltd.,* 140 F.3d 716, 717 (7th Cir.), *cert. denied,* 119 S. Ct. 167 (1998).

   a.     "[W]hen deciding to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988).

   b.     This is an appropriate case in which to retain and exercise jurisdiction over Young's pendent claims under Indiana state law. *Miller Aviation v. Milwaukee County Bd. of Supervisors,* 273 F.3d 722, 731 (7th Cir. 2001) ("[W]hen the district court, in deciding a federal claim, decides an issue dispositive of a pendant claim there is no use leaving the latter to the state court.") (quotation omitted).

   c.     The defendants maintain that the Indiana Tort Claims Act ("ITCA") shields them from liability.  The relevant portion of the ITCA provides:

   > A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from:
   > . . .
   > (8) The adoption and enforcement of or failure to adopt or enforce a law (including rules and regulations), unless the act of enforcement constitutes false arrest or false imprisonment.

IND. CODE § 34-13-3-3(8).

   d.     By its own terms, the ITCA exempts false arrest from its immunity coverage. Still, actual or arguable probable cause precludes a claim for false arrest. *Humphrey v. Staszak,* 148 F.3d 719, 725 (7th Cir.1998). Probable cause exists if the facts and circumstances known to the officer at the time justify a reasonable belief that the suspect had committed a crime or was committing a crime. *Conwell v. Beatty,* 667 N.E.2d 768, 775 (Ind.App. 1996); *Miller v. City of Anderson,* 777 N.E.2d 1100, 1104 (Ind.App. 2002). In this case, probable cause for Young's arrest was established through his disregard of the stop sign. The other torts under state law are similarly defeated by the undisputed account of the traffic stop. Thus, there is no claim under Indiana law as to which Young can prevail, nor is there even a triable question which would defeat the defendants' motion for summary judgment.

     12.     "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 112 S. Ct. 1827, 1830 (1992). Summary judgment is, in a rough sense, "the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Schacht v. Wisconsin Dep't of Corrections,* 175 F.3d 497, 504 (7th Cir. 1999). Young, as the non-movant, has doomed his case by not coming forward with a genuine question of fact for trial. *Liberles v. County of Cook,* 709 F.3d 1122, 1126 (7th Cir. 1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."). "Summary judgment is not a discretionary remedy.  If the plaintiff lacks enough evidence, summary judgment must be granted." *Jones v. Johnson,* 26 F.3d 727, 728 (7th Cir. 1994), *cert. granted* 513 U.S. 1071 (1995). That is precisely the situation with respect to the present case, and the defendants' motions for summary judgment must therefore be **granted**.  Judgment consistent with this Entry shall now issue. The costs of this action are assessed against the plaintiff.

     **IT IS SO ORDERED.**

Date: _01/24/2007_ _____

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana